## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:20-CR-30016-RAL |
| Plaintiff, | |
| | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |
| vs. | |
| MARECA RODRIQUEZ, | |
| Defendant. | |

A tribal officer stopped Mareca Rodriquez's sister, alone in Rodriquez's car, and found drugs in it.  Another officer obtained search warrants for Rodriquez's home, person, and cell phones which yielded physical evidence she moves to suppress.  In her motion, she also seeks to exclude the inculpatory statements she made during a post-arrest custodial interview.  Because the evidence and statements were procured in violation of the Fourth Amendment and Exclusionary Rule, the Court recommends that the suppression motion be granted.

## BACKGROUND

Shortly after 8:00 a.m. on February 4, 2020, Rosebud Sioux Tribe Law Enforcement Services (RSTLES) Sergeant Bryan Waukazoo stopped a red Chevy Impala, going 77 mph in a 65-mph zone, on BIA Route 1 north of Rosebud, South Dakota.  J.R., a 15-year-old girl, was the driver and sole occupant of the car.  She did not

have a driver's license, could not produce a registration for the vehicle, and lied about her age, telling Waukazoo she was 16 years old.  When asked, J.R. said the car belonged to her sister, Rodriquez.

While interacting with J.R., Sergeant Waukazoo could smell the odor of marijuana coming from the vehicle.  He inquired whether there was any marijuana inside.  J.R. replied that she thought Rodriquez had left some roaches in the car and showed Waukazoo one of them she picked up from the passenger side floorboard.  She denied having smoked any marijuana that day and did not appear, in Waukazoo's estimation, to be under the influence.  She apprised Waukazoo that she was on her way to school at the time of the stop and that Rodriquez had the car last.

Sergeant Waukazoo instructed J.R. to get out of the vehicle, which she did, and proceeded to search the interior of it.  Between the door and the driver's side seat, he found a small plastic baggie with "4:20" written on it in red ink which contained a crystal-like substance.  That substance field-tested positive for methamphetamine and weighed 4.08 grams.  Waukazoo then radioed dispatch for assistance, advised J.R. she was being detained, and placed her in his patrol car.  He had not, up to this point, informed her of the reason for the stop (speeding), and he never did so.

In a further search of the car, Sergeant Waukazoo found some rolling papers in the same spot as the methamphetamine baggie.  He also discovered, in the vehicle's center console, a large Ziploc bag with marijuana residue in it, a partial baggie tied in a knot, and a marijuana grinder.

At some point, RSTLES Officers Roxanne Hunger and Jody Charging Eagle arrived on scene.  Hunger conducted a pat-down search of J.R. but it generated no contraband.  Charging Eagle though found another marijuana roach on the driver's floorboard of the vehicle.

Sergeant Waukazoo contacted RSTLES Special Agent Benjamin Estes who came and spoke with J.R.  She reiterated that she had borrowed the car that morning and that it belonged to Rodriquez.  J.R. identified where, in the Sicangu Village community, Rodriquez lived.  In response to questioning, J.R. claimed that Rodriquez "drives" the vehicle and "has seen" her do so.  Rodriquez, however, is paralyzed from the waist down and confined to a wheelchair.  And the car – J.R. was behind the wheel of – had no hand controls or equipment for a paraplegic to operate it.

Based on the information he received from Sergeant Waukazoo and Special Agent Estes, RSTLES Officer Reymond Peters drafted and submitted an affidavit and request for a search warrant to a Rosebud Sioux Tribal judge.  In his affidavit, Peters sought to search Rodriquez's home and person (to include urine) for evidence related to the tribal offense of unlawful possession of a controlled substance, that being methamphetamine.   The judge granted the request, without ever swearing or putting Peters under oath, and issued the warrant exactly as Peters had prepared it.

Around 2:00 p.m. the same day, RSTLES officers executed the search warrant at Rodriquez's residence.  Officers breached the front door to it with a battering ram and searched the home with her present.  They recovered a large amount of drug

paraphernalia, marijuana, and 1,542.5 grams of methamphetamine.  Eventually, officers arrested Rodriquez and transported her to the Rosebud Adult Correctional facility.

About five hours later, Special Agent Estes interviewed Rodriquez.  Because she was in custody, he Mirandized her and she waived her rights.  During the interview, she admitted to having over 3 pounds of methamphetamine and to distributing it on the Rosebud Reservation.

On February 18, 2020, Officer Peters put together another affidavit and request for a warrant, this time to search three cell phones seized from Rodriquez's home two weeks earlier.  The same tribal judge signed the warrant as Peters presented it to him, without requiring that Peters first be sworn.  The date of the warrant, however, reflects that it was issued on February 18, 2019, a year beforehand.

Within a week of the residence search, a grand jury indicted Rodriquez, charging her with the offense of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.  She pled not guilty to the offense and moved to suppress the evidence seized under the authority of the two warrants as well as the statements she made to Special Agent Estes.  At a hearing held on Rodriquez's motion, the Court heard testimony from four witnesses (Sergeant Waukazoo, Officer Peters, Special Agent Estes, and the tribal judge) and received eleven exhibits into evidence.

DISCUSSION

**A. Probable Cause**

Rodriquez asserts that the warrant-based search of her residence, on February 4, was invalid because the supporting affidavit did not provide probable cause to believe that evidence of a crime would be found in the home. She maintains no evidence connects the drugs discovered in the Impala to her person or home.[1]

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause.[2] "Probable cause" to search exists "if there is a fair probability that contraband or evidence of a crime will be found in a particular place."[3] In determining whether probable cause exists, a court must look at the totality of the circumstances.[4] This determination is to be "based upon a common-sense reading of the entire affidavit"[5] and any "reasonable inferences" drawn from it.[6] When a judge relies solely on an affidavit to issue the warrant, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence

---

[1]*See* Dkt. No. 25 at 2-5.

[2]*See United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).

[3]*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[4]*See id.* at 230, 234.

[5]*United States v. Davis*, 867 F.3d 1021, 1027 (8th Cir. 2017).

[6]*United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (*per curiam*).

of probable cause.'"[7]  The affidavit must provide the issuing judge with a "substantial

basis for . . . conclud[ing] that probable cause exist[s]."[8]

"A showing of probable cause requires evidence of a nexus between the

contraband and the placed to be searched."[9]  In other words, the affidavit must establish

"there is reasonable cause to believe that the specific 'things' to be searched for and

seized are located on the property to which entry is sought" and not merely that the

occupant of the property is suspected of a crime.[10]

Officer Peters's affidavit included the following relevant information:

- Sergeant Waukazoo stopped J.R. for speeding in a car she stated belonged to her sister, Rodriquez.

- Waukazoo could smell marijuana coming from within the vehicle during the stop.

- Inside the vehicle, Waukazoo found 4.08 grams of methamphetamine in a small plastic baggie with red numbers on it, a large Ziploc bag containing a green leafy substance (believed to be marijuana), a grinder, and rolling paper.

---

[7]*United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (*quoting United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)); *see also Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565, n.8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing [judge].  A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.").

[8]*Gates*, 462 U.S. at 238-39 (*quoting Jones v. United States*, 362 U.S. 257, 271 (1960)).

[9]*United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) (*quoting United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)).

[10]*Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

- J.R. informed Waukazoo that she was on her way to school and had borrowed the vehicle that morning.

- When asked, J.R. told Special Agent Estes that she had seen Rodriquez driving the car.

- J.R. provided the location of where Rodriquez lived.[11]

Glaringly missing from the affidavit, is information or evidence that showed:

1. Rodriquez had, or might have, drugs at or in her residence;

2. She used, distributed, sold, or trafficked drugs, in or out of her home;

3. The drugs in the car were Rodriquez's as opposed to J.R.'s (or that Rodriquez, and not J.R., was the one who used or possessed them);

4. J.R. was tested for, or under the influence of, drugs;

5. Who else – besides Rodriquez and J.R. – used or had access to the vehicle recently;

6. The car was parked at, or driven from, Rodriquez's residence;

7. Who J.R. "borrowed" the vehicle from;

8. Where J.R. resided and who she lived with;

9. When (how long ago) and where J.R. saw Rodriquez driving the car; and

10. The drugs and paraphernalia in the vehicle were consistent with distribution or trafficking rather than personal use.[12]

These omissions are fatal to the nexus component of the probable cause inquiry.

Granted, the showing necessary under the Fourth Amendment need not be significant.[13]

---

[11]*See* Mot. Hrg. Ex. A at ¶6 (June 18, 2020).

[12]*See id*.

[13]*See e.g.*, *United States v. Patterson*, 666 Fed. Appx. 569, 571-72 (8th Cir. 2016) (known drug dealer's frequent visits to a home can establish nexus to search the home (continued. . .)

Indeed, the Eighth Circuit has all but presumed that there is a sufficient nexus to search the home of someone known to be involved in drug *distribution*, even without specific evidence linking his or her criminal activities to that home.[14]  But the affidavit in this case was not enough to provide an adequate link between Rodriquez's house and her supposed criminal activity.  The connection between the drugs J.R. possessed while driving the car and Rodriquez is an attenuated one.  And it is based on a familial relationship that, without a more detailed factual basis, does not engender probable cause to search.[15]

The warrant affidavit simply contains no evidence that there was any illegal drug activity at Rodriquez's residence and that contraband would be found in it.  The affidavit barely touches on the residence and includes no allegations that Rodriquez bought, sold, used, or possessed drugs at any time or place.[16]  Nor does it allege that J.R. lived, or was staying with, Rodriquez in the house.  The mere presence of drugs in a

---

for contraband); *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) ("evidence of drug manufacturing and distribution" recovered from car accident scene sufficient to justify search of driver's residence); *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007) (nexus to search individual's home exists where that person is closely tied to narcotics trafficking).

[14]*See e.g. Keele*, 589 F.3d at 944.

[15]*See United States v. Herron*, 215 F.3d 812, 814 (8th Cir. 2000); *see generally*, 2 Wayne R. LaFave, *Search and Seizure*, §3.6(c) at 437-38 & n. 178 (5th ed. 2012 & 2019-20 Update).

[16]*See* Mot. Hrg. Ex. A; *see also Herron*, 215 F.3d at 814.

speeding vehicle, driven by a sibling whose other sibling owns the car and a home in the area, is too insignificant a connection to provide the vinculum necessary for a finding of probable cause. The lack of temporal and factual details, tying Rodriguez to illicit drug conduct generally, and at her residence, undermines the Government's claims that the warrant affidavit established probable cause.

Eighth Circuit decisions, exploring nexus and probable cause, highlight the sort of factual allegations conspicuously absent from Officer Peters's affidavit.

1.  Repeated visits by a known drug dealer who used the home for storage.[17]

2.  Evidence of drug manufacturing and drug distribution recovered from an accident scene linked to the driver's home.[18]

3.  Statements that an officer had seen, at the residence, the same truck the defendant was driving when he was arrested after meeting with a co-conspirator who participated in the delivery of a large amount of marijuana to the defendant.[19]

4.  Information that the confidential informant was reliable and had a relationship with the suspect and that the latter was currently in possession of methamphetamine in "an amount greater than personal use."[20]

5.  Evidence of drug use found in a trash pull of the garbage outside the defendant's home.[21]

---

[17]*See Patterson*, 666 Fed. Appx. at 571-72.

[18]*See Keele*, 589 F.3d at 944.

[19]*See Ross*, 487 F.3d at 1123-24.

[20]*See United States v. Carpenter*, 341 F.3d 666, 667, 670-72 (8th Cir. 2003).

[21]*See United States v. Briscoe*, 317 F.3d 906, 908-09 (8th Cir. 2003).

6. A strong showing of narcotics distribution at the defendant's residence.[22]

7. Intelligence from a reliable confidential informant that the defendant stored narcotics and cash at his mother and girlfriend's homes.[23]

8. Confirmation that the utility bill for the residence was in the defendant's name.[24]

None of these facts are present here. The Peters affidavit offered no probable cause that Rodriquez used or possessed narcotics herself or was involved in the drug trade.

The Government contends that the drugs located in and seized from Rodriquez's car were enough to demonstrate a fair probability that her residence would contain evidence of wrongdoing.[25] The argument is premised on the inference that the owner of a car, with drugs in it, is likely to have stored drugs and related paraphernalia in her residence. This inference can be permissibly made in some cases.[26] But in all of them, the affidavits contained an additional fact that allowed the reviewing judge to infer that evidence of wrongdoing would be found in the defendants' homes – namely, the

---

[22]*See United States v. Hartje*, 251 F.3d 771, 774-75 (8th Cir. 2001).

[23]*See United States v. Walker*, 230 F.3d 1365 (8th Cir. 2000) (*per curiam*).

[24]*See United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990).

[25]*See* Dkt. No. 26 at 5-7.

[26]*See e.g., United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012); *Keele*, 589 F.3d at 944; *United States v. Perry*, 531 F.3d 662, 665-66 (8th Cir. 2008); *Ross*, 487 F.3d at 1123; *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994); *see also United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (citing cases).

independently corroborated fact that the defendants were known drug *dealers* when the police sought to search their homes.[27]

Such facts are absent from Officer Peters's affidavit.  He made no reference in his affidavit to Rodriquez being a dealer, narcotics user, or even to her having any drug convictions.  If anything, the fresh scent of marijuana in the car points more to J.R. – who was driving alone illegally – than Rodriquez as the one using or involved in drugs.[28]  Lacking any facts connecting Rodriquez to drug trafficking, the affidavit cannot support the inference that evidence of drug wrongdoing would be found in her home.  Finding small amounts of methamphetamine and marijuana and two items of paraphernalia in Rodriquez's car – that J.R. was the lone occupant of – is nowhere near enough for a warrant to search Rodriquez and her home.

Without a reasonable nexus – or a "common sense" inference of one – and any supporting facts suggesting that Rodriquez and her home would contain evidence of a drug crime, the tribal judge lacked a substantial basis for concluding that probable cause existed for issuing the February 4 warrant.

---

[27] *See id*; *see also 2 Search and Seizure*, §3.7(d) at 530-33 & nn. 198-201.

[28] *See* Mot. Hrg. Tr. 16-19, 21-22, 33, 38-39, 47 (June 18, 2020).

**B.** *Leon* **and Good-Faith Exception**

### 1. Probable Cause

The lack of probable cause does not, however, end the inquiry. When a warrant is not supported by probable cause, a reviewing court must – before suppressing the evidence obtained – consider whether it was "objectively reasonable" for officers carrying out the search to rely "in good faith . . . on the judge's determination that there was probable cause to issue the warrant."[29] That is, the reviewing court must ask whether the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[30]

This good-faith exception prevents introduction of evidence seized under a search warrant that is issued based on a "bare bones" affidavit.[31] The standard by which the warrant affidavit should be judged, for purposes of the exception, is less demanding than the substantial basis standard required to prove probable cause in the first instance.[32] And when assessing good faith under the exception, a reviewing court can look outside the four corners of the affidavit and "consider the totality of the circumstances, including any information known to the officer but not included in the

---

[29]*United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008).

[30]*Leon*, 468 U.S. at 923 (*citing Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).

[31]*See Leon*, 468 U.S. at 915 & n. 13.

[32]*See and compare Leon*, 468 U.S. at 915, 923-25 *with Gates*, 462 U.S. at 238-39.

affidavit."[33]   Admittedly, it is rare for a warrant affidavit to be so facially lacking in probable cause as to make reliance on it "entirely unreasonable."   But this is that rare case.

Officers Peters's affidavit was bare bones or so insufficient that he and executing officers could not reasonably believe they had probable cause to search Rodriquez and her home.[34]   The connection between the illegal activity at the scene of the vehicle stop and the places to be searched (Rodriquez's person and residence) was threadlike at best and wholly inadequate.[35]   The affidavit did not satisfy even the minimal nexus[36] required to support an officer's good-faith belief in the warrant's validity.[37]

Now, there was some additional information Officer Peters may have known but did not mention in his affidavit.   Sergeant Waukazoo's report, which Peters said he read, states that J.R. thought her sister, Rodriquez, left a bunch of roaches in the vehicle

---

[33]*United States v. Johnson*, 848 F.3d 872, 879 (8th Cir. 2017) (*quoting United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007)).

[34]*See* Mot. Hrg. Ex. 1 08:36:51-53 (Sergeant Waukazoo's statement to Officer Hunger, right after the stop, that he did not know whether the drugs in the car were J.R.'s or not).   Mot. Hrg. Tr. 34-35 (Waukazoo's testimony that J.R. did not know if Rodriquez did drugs or whether Rodriquez had drugs herself at her house or she dealt them).

[35]*See* Mot. Hrg. Tr. 34-35, 49-50.

[36]*See e.g., Perry*, 531 F.3d at 665-66; *Ross*, 487 F.3d at 1123-24; *Carpenter*, 341 F.3d at 671-72.

[37]*See* Mot. Hrg. Tr. 72-79, 81-82, 87-90.

and that Rodriquez "had" the car last.[38]   Additionally, J.R. denied smoking marijuana that day and, according to Waukazoo, did not appear to be under the influence.[39] Peters also reviewed the report Special Agent Estes prepared of his interactions with J.R.[40]   But Estes did not provide any information beyond what Peters included in his affidavit.[41]

Supplementing the probable cause allegations with this information, however, does nothing more to link Rodriquez's home to drug trafficking.   The connection to Rodriquez herself, as a personal user (based on a familial relationship and a car with roaches in it she owned but did not possess) is too thin to establish the nexus required for a probable cause showing.   The nexus deficiencies are not mere technical legal ones. They are problems that corrupt any reasonable reliance on the legitimacy of the search warrant and defeat the applicability of the good-faith exception as a saving-grace for the infirm warrant.[42]

---

[38]*See* Mot. Hrg. Ex. F.

[39]*See id.*; Mot. Hrg. Tr. 11.

[40]*See* Mot. Hrg. Ex. A at ¶6; Mot. Hrg. Tr. 47-48, 68-69.

[41]*See* Mot. Hrg. Tr. 51, 58, 68-69.

[42]*See Herron*, 215 F.3d at 814-15; *see and compare with Keele*, 589 F.3d at 944 (drug manufacturing and distribution evidence recovered from defendant's car accident linked to his residence through the experienced opinion of agent that drug manufacturers often keep contraband and proceeds at their personal residences); *Ross*, 487 F.3d at 1124 (defendant had a history of drug distribution activities and was driving the same truck, earlier seen at his residence, when he was arrested after meeting with a
(continued. . .)

Other circuit courts have found police reliance on search warrants unreasonable where the supporting affidavits failed to show a sufficient nexus between the suspected criminal activity and the person or place to be searched.[43]  This case, is likewise one of those few where the lack of a tenable nexus makes any reliance on the warrant unreasonable and subject to the jaws of the Exclusionary Rule.  Officer Peters's affidavit did not allege that Rodriquez was involved in drug dealing, that someone had witnessed the hallmarks of such dealing at her home, that she had a criminal history of drug offenses, or that in his opinion (or that of investigating officers) 4.08 grams of methamphetamine was a distribution or resale quantity.  Nor did the affidavit allege anything else tying Rodriquez or her home to any criminal activity.  That J.R. "thought" Rodriquez had left some roaches in the vehicle is just a speculative and uncorroborated theory, hardly something that Peters or anyone else could have confidence in.

---

co-conspirator who participated in the delivery of 100 pounds of marijuana); *Carpenter*, 341 F.3d at 667, 673 (finding good-faith exception applied where "potential legal deficiencies" were minor and confidential informant specifically stated that suspect possessed methamphetamine in excess of a personal use amount).

[43]*See e.g., United States v. Brown*, 828 F.3d 375, 385-86 (6th Cir. 2016) (reliance on search warrant was entirely unreasonable where the affidavit in support of it did not draw a "plausible connection to the residence" to be searched); *United States v. Underwood*, 725 F.3d 1076, 1086-87 (9th Cir. 2013) (*Leon* exception did not apply where the affidavit provided "no factual basis for the conclusion that drug trafficking evidence would be found at [defendant's] home"); *United States v. Gonzales*, 399 F.3d 1225, 1231-32 (10th Cir. 2005) (good-faith exception inapplicable where the affidavit lacked a "factual basis connecting the place to be searched to defendant or suspected criminal activity" so that reliance on the warrant was "entirely unreasonable").

The evidence in the affidavit connecting Rodriquez's criminal conduct to her person and residence was so vague and conclusory that it made any official belief in the search warrant's existence objectively unreasonable.

### 2. Rubber Stamp

Rodriquez argues that the judge who issued the search warrant for her person and residence acted as a mere "rubber stamp" for tribal police.[44]  By doing so, she asserts, the judge abandoned his judicial duties, making the *Leon* good-faith exception inapplicable.

A search warrant must be reviewed by a neutral and detached judge before it can be executed.[45]  This separate review, by a member of the judiciary, provides protection against the sometimes "hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime" and serves as "a more reliable safeguard against improper searches."[46]  The judge must act in a neutral and detached manner and "not serve merely as a rubber stamp for the police."[47]

It is not altogether clear what sort of behavior constitutes abandonment of judicial duties.  In one case, the Eighth Circuit held that the magistrate judge abandoned

---

[44]*See* Dkt. No. 25 at 7.

[45]*See Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971).

[46]*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326 (1979).

[47]*Leon*, 468 U.S. at 914; *see also Gates*, 462 U.S. at 239 (judge's issuance of a warrant "cannot be a mere ratification of the bare conclusions of others").

his neutral and detached function when he signed a search warrant without reading it.[48] The judge had relied on what the police officer told him and did not notice that the warrant failed to list the property to be seized and that the prosecutor had not signed it as state law required.[49]

A judge can be said to act as a mere "rubber stamp" if he or she relies only on the fact the police officers are asking for a warrant. As the Supreme Court declared some time ago, "[w]hatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement."[50]

Against an understandably exacting standard,[51] the Court nonetheless concludes that the tribal judge rubber stamped a deficient affidavit and issued a legally indefensible warrant that authorized the search and seizure of drug manufacturing and distribution evidence. The following backs up this conclusion and shows that the judge crossed the line and shirked his judicial responsibilities:

1. One of the judge's responsibilities is to follow the law. But he did not do so. Tribal law required that a warrant "be issued *only* upon sworn testimony or affidavit establishing grounds for the issu[ance] of it."[52] (emphasis added).

---

[48]*See United States v. Decker*, 956 F.2d 773, 777 (8th Cir. 1992).

[49]*Id.* at 775.

[50]*Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972).

[51]*See United States v. Dickerman*, 954 F.3d 1060, 1068-69 (8th Cir. 2020).

[52]*Law and Order Code of the Rosebud Sioux Tribe*, §7-IX(C); *see also U.S. Const. amend. IV* ("no Warrants shall issue, but upon probable cause, supported by Oath or (continued. . .)

Officer Peters acknowledged that he signed his affidavit without first being sworn.[53]  This lapse was not some inadvertent mistake, clerical error, oversight, or rare-occasion accident.[54]  The judge testified that he *never* swears search warrant affiants and did not do so in this case.[55]  His persistent malfeasance is troubling, to say the least, because it violates tribal law and the oath he took to uphold it.[56]

2. The judge likewise has *never* declined "entirely" to issue a search warrant presented to him and has only told officers to change warrant documents, get more information, or asked officers questions "once or twice."[57]  This pattern of "passive, automatic issuance of warrants" is indicative of rubber stamping.[58]

3. Notably, he was the chief prosecutor for the Tribe for six and-a-half years before being appointed a judge.[59]

---

affirmation").

[53]*See* Mot. Hrg. Tr. 67, 86.

[54]*See and compare with United States v. Hessman*, 369 F.3d 1016, 1022 (8th Cir. 2004) ("rare occasion" where magistrate "accidently" failed to administer oath to affiant officer).

[55]*See* Mot. Hrg. Tr. 67, 92, 96-97; *see also and compare with United States v. Brooks*, 285 F.3d 1102, 1105-06 (8th Cir. 2002) (where the officer manifested an intention to be under oath); *United States v. Hyten*, 5 F.3d 1154, 1156-57 (8th Cir. 1993) (Fourth Amendment violation – that there was no oath by affiant – was not prejudicial to defendant and therefore not of constitutional magnitude because search of home would have occurred anyway and no reckless disregard of proper warrant procedure).

[56]*See Law and Order Code of the Rosebud Sioux Tribe* §7-IX(C), and §9-2-4; *see also id.*at §9-1-12 ("Judges shall . . . discharge all duties imposed upon them by law. . . .")

[57]Mot. Hrg. Tr. 97.

[58]*Dickerman*, 954 F.3d at 1069 (*quoting United States v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005)).

[59]*See* Mot. Hrg. Tr. 91-92, 95.

4. The judge failed to change or correct the line directly above his own signature that states the search warrant affidavit was "[S]ubscribed and sworn to before me this 4th day of February, 2016," (four years prior to the date Peters signed the affidavit).[60]

5. The judge did this same thing again on the February 18 warrant for the three cell phones, filling in the date and month but leaving the pre-printed date – 2019 – alone.[61]

6. He did not recognize, much less alter or fix, the erroneous legal citations to the drug possession offense set forth in the affidavit and search warrant, despite being knowledgeable of tribal drug laws.[62]   The citations are confusing, especially those to Title 11.   That Title pertains to the tribal tax code.

7. Nor did he discern from Peters's affidavit that nexus – and thus probable cause – was lacking.[63]

8. The judge signed the search warrant Peters submitted without making any additions, deletions, or changes to it.[64]

9. In this warrant, Peters included language that authorized tribal officers to search Rodriquez "wherever she can be found in South Dakota" (even off the Rosebud Reservation which they are proscribed from doing)[65] and her home

---

[60]*See* Mot. Hrg. Ex. A at 11; Mot. Hrg. Tr. 82-83.

[61]*See* Mot. Hrg. Ex. D at 2.

[62]*See* Mot. Hrg. Exs. A, B.; Mot. Hrg. Tr. 99-100.

[63]*See Decker*, 956 F.2d at 777.

[64]*See* Mot. Hrg. Ex. B; Mot. Hrg. Tr. 104.

[65]*See United States v. Henderson*, 906 F.3d 1109, 1117 (9th Cir. 2018) ("The weight of authority is clear:  a warrant purportedly authorizing a search beyond the jurisdiction of the issuing [ ] judge is void under the Fourth Amendment."), *cert. denied*, 139 S.Ct. 2033 (2019); *United States v. Krueger*, 809 F.3d 1109, 1123-24 (10th Cir. 2015) ("a warrant issued for a search or seizure beyond the territorial jurisdiction of a [judge's] powers under positive law was treated as no warrant at all;" "a warrant may travel only so far as the power of its issuing official") (Gorsuch, J. concurring); *Engleman v. Deputy Murray*, 546 F.3d 944, 948-49 (8th Cir. 2008) ("the jurisdiction of the issuing judge and

(continued. . .)

for firearms, ammunition as well as property used in or associated with the manufacture and distribution of illegal drugs.[66]  No basis existed for a search of this scope and magnitude, given the probable cause showing Peters made in his affidavit.[67]

10. The judge accepted and approved a form affidavit with boilerplate provisions in it and issued a warrant, without question, hesitation, or – more importantly – probable cause, that mirrored Peters's affidavit.[68]  The warrant authorized the search of Rodriquez's person, urine,  and home for evidence of the manufacture and distribution of drugs based on the vehicle stop of her sister, J.R., who had small amounts of narcotics with her in the car.[69]

11. The judge assumed there was probable cause to search the house based on Rodriquez's ownership of the car and the familial connection between she and J.R.[70]

12. He made no inquiry into how long the methamphetamine, marijuana, or paraphernalia had been in the car, how they got there, whose they were, and

---

the executing officer is limited, and a warrant is not valid if an officer acts outside of that limited jurisdiction"); *see generally 2 Search and Seizure*, §4.2(f) at 634-35 & nn. 91, 99.

[66]*See* Mot. Hrg. Ex. B; Mot. Hrg. Tr. 70, 74, 104.

[67]*See* Mot. Hrg. Ex. A; Mot. Hrg. Tr. 72-79, 81, 85.

[68]*See* Mot. Hrg. Exs. A, B; Mot. Hrg. Tr. 69-70; *see also United States v. Farlee*, 910 F.Supp.2d 1174, 1187 (D.S.D. 2012), *aff'd*, 787 F.3d 810 (8th Cir. 2014) ("one way an issuing judge acts as a rubber stamp is when the affidavit lacks probable cause and the judge issues the warrant without question or hesitation"); *see also United States v. Swift*, 720 F.Supp.2d 1048, 1058-59 (E.D. Ark. 2010) (suppressing evidence when a blanket affidavit contained expansive boilerplate language allowing car searches at a house, no probable cause for them existed, and the judge signed the warrant "without question or hesitation").

[69]*See* Mot. Hrg. Ex. B; Mot. Hrg. Tr. 69-70, 100-04, 106-08.

[70]*See* Mot. Hrg. Tr. 95, 103, 106-08; *see also Herron*, 215 F.3d at 814 (search warrant resting primarily on "familial relation" is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable").

whether they came from Rodriquez or her dwelling.[71]  Tribal law permitted him to take under oath testimony on these and other matters in deciding whether to issue the search warrant.[72]  But he chose not to and was silent.[73]

13. What's more, he blindly accepted that the drugs and paraphernalia found in Rodriquez's car were hers, not J.R.'s, and that Rodriquez's constructive possession of them was enough to allow police to search her house for evidence of distributing and manufacturing methamphetamine.[74]

14. Finally, the judge neither received nor required any predicate proof, before issuing a broad-purview warrant, that the quantities of methamphetamine and marijuana found in the vehicle were consistent with drug trafficking, rather than personal use.[75]

"Neutrality and detachment" call for some measure of distance and impartiality to avoid "distort[ing] the independent judgment the Fourth Amendment requires."[76] The judge here approved and signed what was put before him.  He had no business

---

[71]*See* Mot. Hrg. Tr. 64, 76, 94, 97, 109, 118.

[72]*See Law and Order Code of the Rosebud Sioux Tribe*, §7-IX(C); *see and compare with Dickerman*, 954 F.3d at 1069 (where state law prohibited the issuing judge from considering oral testimony in the search warrant application process).

[73]*See Dickerman*, 954 F.3d at 1068 ("judge's silence might tend to show that he was acting as a mere 'rubber stamp' instead of actively making an independent probable cause determination").

[74]*See* Mot. Hrg. Tr. 106-09.

[75]*See* Mot. Hrg. Tr. 94, 97, 102-03, 118-19.

[76]*Shadwick*, 407 U.S. at 350-51.

though issuing the search warrant he did[77] because both the affidavit and warrant were fatally flawed.

The *Leon* good-faith exception does not shield the warrant-based search and seizure of Rodriquez's home and person from the Exclusionary Rule.[78]  Suppression is proper, therefore, for this alternative reason as well.

### D.  Fruit of the Poisonous Tree

#### 1.  Physical Evidence

"Evidence obtained as a direct result of an unconstitutional search or seizure is [ ] subject to exclusion."[79]  The Exclusionary Rule applies with equal force to evidence that is derivative of an illegal search, unless the connection between the constitutional

---

[77]*See Massachusetts v. Sheppard*, 468 U.S. 981, 990, n. 7 (1984) (*quoting* Justice White in *Gates* that there may be instances in which "it is plainly evident that a magistrate or judge had no business issuing a warrant").

[78]*See United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (refusing to apply good-faith exception due to the "bare bones" and "conclusory" nature of the search warrant affidavit and because the state magistrate "could not have acted as other than a 'rubber stamp' in approving [the] affidavit"); *see also United States v. Pinder*, Criminal Action No. 2:07cr19, 2007 WL 1597787 at **10-11 (E.D. Va. June 1, 2007) (magistrate acted as a "rubber stamp" in authorizing search warrant based on "bare bones" and "conclusory" allegations); *United v. Cotton*, NO. CRIM RDB 05-0409, 2005 WL 3591960 at **7-8 (D. Md. Dec. 23, 2005) (*Leon* good faith exception does not apply because nothing in search warrant affidavit as to drug activity at defendant's residence "other than the subjective belief and suspicion" of the officer), *aff'd*, No. 06-4530, 2007 WL 664909 (4th Cir. March 6, 2007) (*per curiam*).

[79]*Segura v. United States*, 468 U.S. 796, 804 (1984).

violation and the evidence is "so attenuated as to dissipate the taint."[80]  The defendant

has the burden to make an initial showing that the evidence sought to be suppressed

has been tainted by an unconstitutional search.[81]  Once the defendant has done so, "the

ultimate burden of persuasion to show the evidence is untainted lies with the

government."[82]

As already explained, the evidence seized from Rodriquez's evidence and her

person must be suppressed because the February 4 search warrant was woefully

flawed.  The question then becomes whether the warrant issued two weeks later for

three cell phones found and seized during the search of Rodriquez's home[83] was tainted

by the earlier, defective, warrant.  Because the later warrant and physical evidence

obtained from it (cell phone data and information) flowed directly from the illegal

search of the residence,[84] the evidence must be suppressed as fruit of the poisonous

---

[80]*Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (*citing Nardone v. United States*, 308 U.S. 338, 341 (1939)).

[81]*See United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011).

[82]*Id*.

[83]*See* Mot. Hrg. Exs. C, D.

[84]*See* Mot. Hrg. Tr. 80.

23

tree.[85]   Tribal police acquired such evidence as a result, and by exploitation, of the unlawful home search and hence the evidence may not be used against Rodriquez.[86]

### 2. Custodial Statements

When the fruit of a Fourth Amendment violation is a confession, the Exclusionary Rule is applied "to ensure that the confession is not causally linked to the initial illegality."[87]   In such cases, "[t]he giving of *Miranda* warnings, followed by the making of a voluntary statement, does not, in and of itself, mandate a statement's admissibility."[88]   To break the causal chain between an illegal search and seizure and statements made afterward, the later statements must be "sufficiently an act of free will to purge the primary taint."[89]   In determining whether they are or not, courts consider *Miranda* warnings, the temporal proximity of the arrest and statements, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct.[90]

---

[85]*See Wong Sun*, 371 U.S. at 487-88.

[86]*See id*.

[87]*United States v. Simpson*, 439 F.3d 490, 493 (8th Cir. 2006) (*citing Brown v. Illinois*, 422 U.S. at 602-03).

[88]*United States v. Vega-Rico*, 417 F.3d 976, 979 (8th Cir. 2005) (*citing Brown*, 422 U.S. at 602).

[89]*Wong Sun*, 371 U.S. at 486.

[90]*See Brown*, 422 U.S. at 603-04.

Here, Rodriquez made her post-*Miranda* statements about five hours after the home invasion occurred.[91]  She was in custody during this time period and not free to leave.[92]  Special Agent Estes, who conducted the interview, participated in the raid and search of the house and in the investigation at the scene of J.R.'s vehicle stop.[93]  The purpose of his interview was directly related to the incursion and he sought to elicit inculpatory statements from Rodriquez about her drug dealing and use.[94]  And the underlying Fourth Amendment violations were markedly flagrant and included police breaking open the front door of Rodriquez's dwelling with a battering ram a few seconds after their knock and announce.[95]

The Government has failed to show that Rodriquez's statements were obtained by means sufficiently distinguishable from the unlawful search and seizure at her residence only a handful of hours earlier.  Because the statements are the product of a

---

[91]*See* Mot. Hrg. Exs. E, G.

[92]*See* Mot. Hrg. Ex. E.

[93]*See* Mot. Hrg. Exs. 1, E, F, G.

[94]*See* Mot. Hrg. Ex. E; Mot. Hrg. Tr. 60.

[95]*See* Mot. Hrg. Ex. G at 13:59:01-:07; *see also United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir. 1993) ("lapse of less than five seconds" violated 18 U.S.C. §3109); *see generally 2 Search and Seizure*, §4.8(c) at 855-56 & nn. 72-74.

Fourth Amendment transgression, they must be suppressed under the Exclusionary Rule.[96]

## CONCLUSION

The initial warrant to search Rodriquez's home and person was based on a legally insufficient showing of probable cause. The shortcomings in the warrant affidavit were so apparent that a reasonable officer could not have believed the warrant was valid. The tribal judge who issued the warrant rubber stamped what Officer Peters prepared and asked for. As a result, the physical evidence seized from the residence should be suppressed.

And because the subsequent cell phone warrant relied so heavily on the evidence taken from the home, the warrant is tainted and the physical evidence seized should likewise be suppressed as fruit of the poisonous tree. The same is true of Rodriquez's statements to Special Agent Estes. She made them on the heels of the house search and they were contaminated by the illegality of it.

## RECOMMENDATION

For all of these reasons, and based on the authorities cited in this report, it is hereby

RECOMMENDED that:

1.   Rodriquez's Motion to Suppress[97] be granted.

---

[96]*See Brown*, 422 U.S. at 603-05; *Wong Sun*, 371 U.S. at 484-87.

[97]*See* Dkt. No. 24.

2. Any physical evidence seized as a result of the two warrants be suppressed as fruit of the improper initial warrant.

3. Rodriquez's statements made right after the search of her home be suppressed as fruit of the same inept warrant.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[98] Unless an extension of time for cause is later obtained,[99] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[100]  Objections must "identify[] those issues on which further review is desired[.]"[101]

Dated this 17th day of July, 2020, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[98]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[99]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[100]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[101]*Arn*, 474 U.S. at 155.