UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARECA RODRIQUEZ,<br><br>Defendant. | 3:20-CR-30016-RAL<br><br><br>**OPINION AND ORDER ADOPTING REPORT AND RECOMENDATION AND GRANTING MOTION TO SUPPRESS** |

A federal grand jury indicted Mareca Rodriquez (Rodriquez) for conspiracy to distribute a controlled substance in violation of 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Doc. 1. Rodriquez moved to suppress evidence seized in her home under an initial tribal search warrant on the basis that the search violated the Fourth Amendment. Docs. 24, 25. She also moved to suppress evidence seized in her home under a second tribal search warrant as well as statements she made in a post-arrest interview as being fruit of the poisonous tree. Docs. 24, 25.

Magistrate Judge Mark A. Moreno held a suppression hearing during which he received 11 exhibits and heard testimony from four witnesses: Sergeant Bryan Waukazoo, Officer Reymond Peters, Special Agent Benjamin Estes, and Judge William Bossman. Doc. 33; Mot. Hr'g Tr. at 2–3. Thereafter, Judge Moreno issued a Report and Recommendation recommending that the motion to suppress be granted in its entirety. Doc. 40. The Government has filed an objection to that Report and Recommendation. Doc. 41.

1

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the Report and Recommendation to which the Government objects, this Court adopts the Report and Recommendation in its entirety.

I.   **Discussion**

A. **Lacking in Indicia of Probable Cause**

The Government does not object to Judge Moreno's finding that the initial tribal search warrant was not supported by probable cause. Rather, the Government objects to Judge Moreno's conclusion that the Leon good-faith exception does not apply. "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citing United States v. Leon, 468 U.S. 897, 922 (1984)). However, the exception does not apply when the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)); see also United States v. Dickerman, 954 F.3d 1060, 1065 (8th Cir. 2020) ("The good-faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well trained officer would have known that the search was

2

illegal despite the issuing judge's authorization." (citation omitted)). In determining whether it was objectively reasonable for the officer to rely on the validity of the warrant, courts "can look outside the four corners of the affidavit and consider the totality of circumstances, including what the officer knew but did not include in the affidavit." Dickerman, 954 F.3d at 1065 (quoting United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014)).

The Government points to several facts to support its argument that the Leon good-faith exception applies. However, none of these facts connect the suspected criminal activity to Rodriquez's home. First, the Government highlights Special Agent Estes's testimony that four grams of methamphetamine—the amount of methamphetamine found in the vehicle driven by Rodriquez's juvenile sister—is a distributable amount. Mot. Hr'g Tr. at 44, 57. However, this fact by itself merely suggests that *someone* is distributing methamphetamine; it does not suggest that Rodriquez herself (who loaned the car to her sister) was distributing methamphetamine or that there would be evidence of distribution in her home. In fact, Officer Waukazoo admitted that at the time of the stop he did not know to whom the drugs belonged because when asked whether her older sister used drugs, Rodriquez's juvenile sister simply shrugged her shoulders which Officer Waukazoo interpreted as, "I don't know." Mot. Hr'g Tr. at 19–20, 24, 33–34. And at no point did Officer Waukazoo ever ask the juvenile sister if Rodriquez dealt drugs. Mot. Hr'g Tr. at 33–34.

The facts of this case are distinguishable from the facts in United States v. Moya, 690 F.3d 944, 948 (8th Cir. 2012) to which the Government cites. In that case, the Eighth Circuit stated that an "officer and issuing judge may infer that evidence of drug trafficking exists at the home of a person arrested in possession of drugs with intent to distribute." Id. But unlike in Moya, the drugs here were not found near Rodriquez's person or in her possession. Rather, the drugs were found

3

in a vehicle of which she was not an occupant, and the officers were not aware as to how recently Rodriquez had access to the vehicle.

Second, the Government argues that because the methamphetamine was found in plain view on the floorboard between the driver's seat and driver's door, Mot. Hr'g Tr. at 9, 19, this suggests that "the methamphetamine had not lingered there a long time." Doc. 41 at 6. While that may be true, this does not further the Government's cause. If anything, such a recent placement of the methamphetamine in the car would suggest that it belonged to a current occupant of the vehicle, and Rodriquez's juvenile sister was the driver and only occupant when the vehicle was stopped. In sum, the floorboard placement of the methamphetamine does not connect it to Rodriquez's home.

Finally, the Government contends that the presence of other items of drug paraphernalia, Mot. Hr'g Tr. at 12, indicates that "the presence of methamphetamine in the vehicle was also not a fluke or something left on accident by a visitor, but an indicator of the vehicle owner's involvement with narcotics." Doc. 41 at 6. Again, the presence of the drug paraphernalia by itself merely suggests that *someone* is involved with methamphetamine use and possibly distribution. The drug paraphernalia does not necessarily indicate that Rodriquez, as the owner of the vehicle, was distributing drugs from home, especially since the officers had no idea how recently Rodriquez had access to the vehicle. Further, the drug paraphernalia was found in the center console, and therefore like the methamphetamine, was within reach of the driver. Mot. Hr'g Tr. at 12. That Rodriquez's juvenile sister said she borrowed the vehicle from Rodriquez and that perhaps one of the marijuana roaches belonged to Rodriquez is insufficient for the officers to conclude that the evidence in the vehicle was connected to Rodriquez's home.

4

Rather than restating all the reasons why and the authority for not applying the Leon good-faith exception, this Court attaches the Report and Recommendation and incorporates its findings herein. Judge Moreno properly concluded that the search warrant was so lacking in indicia of probable cause that the officers' belief that the warrant was valid was objectively unreasonable. Judge Moreno fully and appropriately addressed this issue in his Report and Recommendation.

### B. Abandonment of Judicial Duties

But even if this Court assumes that the officers were objectively reasonable in their belief that the warrant was valid, the Leon good-faith exception still cannot apply when "the issuing magistrate wholly abandoned his judicial role." Leon, 468 U.S. at 923. "A warrant may be issued only by an official who is 'neutral and detached' and 'capable of determining whether probable cause exists for the requested arrest or search.'" Farlee, 757 F.3d at 819 (quoting Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972)). A warrant issued by a neutral and detached judicial officer is "a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326 (1979) (cleaned up and citation omitted).

"A judge abandons his or her judicial role when he or she does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer." United States v. Ortiz-Cervantes, 868 F.3d 695, 703 (8th Cir. 2017) (cleaned up and citation omitted). The Eighth Circuit has held that a judge abandoned his neutral and detached function when he signed a search warrant without reading it and failed to notice that the prosecutor had not signed the warrant as required by state law and that the warrant did not list the property to be seized. United States v. Decker, 956 F.2d 773, 777 (8th Cir. 1992). The Supreme Court has also found violations where the judge possessed a pecuniary interest in issuing the warrant, see

5

Connally v. Georgia, 429 U.S. 245, 251 (1977) (per curiam), and where the judge actively participated in the police investigation, see Lo-Ji Sales, 442 U.S. at 327–28. See also United States v. Hallam, 407 F.3d 942, 946 (8th Cir. 2005) (acknowledging that a "magistrate's relative silence . . . might tend to show that he was acting as a 'mere rubber stamp,'" but ultimately finding no violation because "[t]here was no indication that the magistrate was biased or impartial, nor is there any evidence of a pattern of passive, automatic issuance of warrants")

The Government objects to Judge Moreno's conclusion that the tribal judge, Judge William Bossman, abandoned his duties and acted as a mere rubber stamp for tribal police. Although the government concedes that the tribal judge came to the wrong legal conclusion in determining whether there was probable cause to support the warrant, the Government argues that nonetheless he did not abandon his duties because he read the affidavit and was unfamiliar with Rodriquez and not involved in the investigation. Mot. Hr'g Tr. at 93–94. However, as Judge Moreno found, there were other facts to suggest that he had abandoned his judicial duties. In particular, the tribal judge testified that he did not abide by the Fourth Amendment requirement for a warrant to be supported by oath and affirmation and did not ask Officer Peters any questions about the affidavit. Mot. Hr'g Tr. at 94. He also testified that in his three and a half years as a tribal judge, he had never declined to issue a warrant in its entirety, and he had only asked the officers additional questions or asked them to reword the affidavit or gather more information "once or twice." Mot. Hr'g Tr. at 91, 97. These facts, along with the many other facts that Judge Moreno highlights in his Report and Recommendation, see Doc. 40 at 17–21, reveal a pattern of "passive, automatic issuance of warrants." Hallam, 407 F.3d at 946. Thus, Judge Moreno properly concluded that the Leon good-faith exception did not apply because, in the alternative, the tribal judge abandoned his judicial

duties. Judge Moreno fully and appropriately addressed this issue in his Report and Recommendation.

II.     **Conclusion**

For the foregoing reasons, it is hereby

ORDERED that the Government's Objection to the Report and Reccomendation, Doc. 41, is overruled. It is further

ORDERED that the Report and Reccomendation For Disposition of Motion to Suppress, Doc. 40, is adopted and attached hereto. It is further

ORDER that Rodriquez's Motion to Suppress, Doc. 24, is granted.

DATED this 15th day of October, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE